This morning I want to emphasize three points. First, Keller v. State Bar of California does not bar the plaintiff's First Amendment challenge to Louisiana's requirement that he join the Louisiana State Bar Association as a condition of practicing law. Second, the Tax Adjunction Act does not bar the plaintiff's First Amendment challenge to mandatory Louisiana State Bar Association dues because the dues are a fee, not a tax. Third, the plaintiff has standing to pursue his alternative claim that even if mandatory dues sometimes can be constitutional, the Louisiana State Bar's collection of mandatory dues is not constitutional because the LSBA has not provided the safeguards for attorneys' First Amendment rights that the Supreme Court prescribed in Keller. Keller does not foreclose the plaintiff's challenge to mandatory LSBA membership for the reasons that plaintiff's counsel in the preceding case went over. Keller, of course, said that it violates an attorney's right to freedom of speech to require the attorney to fund Bar Association activities that aren't germane to regulating the legal profession or improving the quality of legal services, and it said that Bar Association has to provide certain safeguards to ensure that attorneys aren't forced to pay for non-germane speech. Mr. Hubert, does your complaint, and this is a neutral question I just want to know, does your complaint identify non-germane activities to which your client objects by the Louisiana State Bar? Yes, it identifies non-germane activities that he does not wish to fund or associate with. That includes, for example, advocacy for removing the free enterprise education requirement from the state's high school curriculum, advocacy for laws that would prohibit private discrimination on the basis of sexual orientation, advocacy against a proposal to allow qualified school personnel to carry firearms, and there are other examples. These things are plainly non-germane. They have absolutely nothing to do. But these are directly, over here, these are directly alleged in your complaint, these specific examples you're giving? Yes, this is all identified in the complaint, and he's alleged that the bar engages in these things. He's alleged that he doesn't want to associate with the bar or with its speech, and therefore he's alleged that exactly what he must to present the freedom of association issue that the Supreme Court left open in Keller. You've read Crowe, obviously, Crowe. I'm having, I'll just shout, I'm sorry, but the, you've read Crowe from the Ninth Circuit. Are you making a similar claim? I think you are, but I just want to confirm that you're making a similar claim that the bar is speaking on its own behalf on ideological activities, and so your clients can't be forced to even join it. That's exactly right. Okay, can you point to, are you saying there's something Louisiana Bar is doing that is tantamount to what the Oregon Bar has done in Crowe? Yes, if you read Crowe, because it's advocacy for and against legislation, actual or proposed legislation. It's not just a, you know, a statement of an idea, but it's affirmative advocacy for and against public policies that have absolutely no arguable connection to regulating the legal profession or improving the quality of legal services, and so he therefore argues that being associated with that speech violates his First Amendment right to freedom of speech. Okay, so let's talk about the plaintiff's claim that the Supreme Court left open in Keller. The defendants say that the plaintiff is essentially arguing that Janus overruled Keller, but that's not what the plaintiff's arguing because Keller didn't resolve this point, so there's nothing for Janus to overrule on this issue. Janus is relevant to the plaintiff's claim, not because it violates his First Amendment right to freedom of speech, but because it violates his First Amendment right to freedom of speech. The plaintiff's claim is that the Supreme Court is to apply when somebody challenges mandatory association with political or ideological speech, and that standard is exacting scrutiny under which the government has to show that it's serving a compelling governmental interest and that there's no other way it could serve that interest that would infringe significantly less on people's First Amendment rights. So while mandatory bar membership at least can, theoretically, serve a compelling interest in regulating the legal profession, certainly the state can serve that interest without requiring attorneys to join a bar association, let alone a bar association that engages in this kind of non-germane political and ideological speech. So for that reason, the court should reverse the plaintiff's challenge to mandatory Louisiana State Bar Association membership. Turning to the next issue, the Tax Injunction Act does not bar the plaintiff's challenge to Louisiana State Bar Association's collection of mandatory dues because the dues are a fee and not a tax. LSBA dues have all the characteristics of a classic fee under the criteria this court considers in determining whether a charge is a tax or a fee for purposes of the Tax Injunction Act. It's linked to a regulatory scheme, the scheme for regulating lawyers. It is charged by the LSBA and it's imposed on the LSBA's members and nobody else. It's not charged by the legislature, it's not collected from anybody other than the LSBA's members, and the funds go entirely to defray the LSBA's expenses. They don't go to the state treasury, they go to the state office. The LSBA argues that actually it doesn't regulate the legal profession. They say that they don't do that so this can't be a regulatory fee, but the LSBA's Articles of Incorporation lists regulating the legal profession first among its objects and purposes. So do the LSBA's annual reports and the legislation recognizing the creation of the LSBA says that the Also, the LSBA's argument on this point contradicts its argument defending mandatory membership in the LSBA, because if mandatory Bar Association membership can be justified at all, it's because attorneys can be forced to pay for their own regulation. And the LSBA cites those Supreme Court precedents in defending mandatory membership. But if the LSBA doesn't regulate the legal profession, then it really is just a trade association for the legal profession and there's no justification for making attorneys join it. And so the plaintiff should win on his mandatory membership claim for that reason alone. The LSBA tries to get around that implication of its argument by saying that it's basically like a state agency providing benefits to the general public, but the LSBA has only identified two activities that it allegedly engages in that involve members of the general public. One of those is providing arbitrations between lawyers and their clients. But there's no evidence before the court that the LSBA actually conducts these arbitrations, let alone that it uses members' mandatory dues to do so. The other activity it identifies is client assistance, providing money to people who were wronged by their attorneys who have no other remedy. But there's no evidence that they use member dues to do that. In fact, the most recent available LSBA annual report says that the LSBA did not provide any funding to the state's client assistance fund in the past two years. And the LSBA's bylaws say that the LSBA's client assistance fund will be funded by, quote, voluntary contributions or otherwise, unquote, which suggests that the LSBA might never have used mandatory dues for client assistance. Mr. Hubert, on the germaneness point, Mr. Harris, I don't actually know if you were here in court or... I was. Okay. Mr. Harris arguably seemed to be taking the position that a bar is barred from engaging in any political activities, even if, in other words, lobbying for regulation of the legal profession. It seemed that was the strong version of his position. If I've got that right, do you take that position also? Yes, Your Honor. So our mandatory association claim has two components. There's a broader claim... Well, I guess I'm not so much asking about that as about the, you can't force us to contribute funds that go to non-germane activities that are political or ideological. Mr. Harris seemed to be drawing a sharp distinction between germane expenditures and political expenditures. Our point or some of our questions went to, well, sometimes they're going to be political activities that do go to regulating the legal profession. My example was lobbying about lawyer advertising bills, bills to regulate lawyer advertising. I'm trying to get what is your position on that? Are they always non-germane political activities that are about legal regulation? Certainly, it's very difficult to draw a line between germane and non-germane activities. Well, that's why I'm asking. Right, and we would, and our position in both of our claims, the association and the speech claims, is that forced association or forced funding for any political or ideological speech, whether it's germane or not, violates the First Amendment. But we would also argue in our association claim that at least association with a non-germane speech violates an attorney's right to freedom of association. And, of course, that's the issue that Keller expressly left open for resolution in a future case. So what's your view? Could bar dues be used to further lobbying the legislature with respect to a bill that regulates attorney advertising? No, our position would be that it's not appropriate to force lawyers to fund that kind of speech because it's still political or ideological. It's something on which lawyers might well disagree and there's no... So, I guess, so what about Judge Smith's example of legislation to redistrict intermediate appellate courts in a state? Could the Bar Association lobby with respect to that legislation? Not using mandatory dues under our argument because, again, they're people, it's a political issue. People could disagree with it. People could have sort of disinterested legal profession sort of reasons for having an opinion based on how they think that's going to affect the composition of courts and the outcomes of cases and that sort of thing. And so it's all political or ideological speech and our view is that attorneys shouldn't be forced to fund any of it. But, of course, our mandatory dues claim isn't... the merits of that aren't before the court because it was dismissed on this tax exemption. But, ultimately, on the merits we would argue that attorneys should not be forced to fund any political or ideological speech whatsoever. On the tax injunction issue, you know, they say they provide benefits to the general public. They've only identified those two activities. No evidence that they engage in those at all and, even if they did, it would certainly be a very small part of what they do. If one looks at what the LSBA does from its annual budgets to the extent one can discern it, it's all stuff that pertains to serving lawyers or acting as a trade association on behalf of lawyers, publishing journals, holding conferences, and lobbying and advocating for and against legislation and public policies. There's nothing else that involves dealing with the public. They point to the Louisiana Supreme Court decision in Ray Mundy that said that bar dues are a license tax, but, of course, that's not how this court determines whether something's a tax for purposes of the Tax Injunction Act. The court, instead, considers the criteria in the Homebuilders and Nynest cases, which don't include whether a court has said in some other context that something is called a tax. And the court said specifically in the Henderson case that the label applied under state law doesn't decide this. The court said in the Trammell case that state court decisions of calling something, saying that something is or isn't a tax for state law in another context, don't control. But if we do want to look at what these dues are called in another context, we might consider that the LSBA, except in this litigation, never refers to the charges that it imposes on its mandatory members as a tax. It calls them dues, and we think of dues as a fee that somebody pays to be a member of an organization. I'm aware of no other context in which the term dues is used to refer to a tax. And this argument on the Tax Injunction Act, and the district court's decision accepting it, are extraordinary outliers. There are currently, or recently have been, cases challenging mandatory bar dues before the 6th, 7th, 8th, 9th, and 10th circuits, and in none of those cases did the defendants even raise the Tax Injunction Act as a potential bar to the plaintiff's claims. And, of course, as the Tax Injunction Act doesn't bar the plaintiff's claims. So this court should reverse the district court's dismissal of plaintiff's challenge to the collection of mandatory dues under the Tax Injunction Act, and remand the claims of the district court can consider the merits in the first instance. Finally, the plaintiff has standing to pursue his alternative claim that even if mandatory dues can be constitutional, the LSBA's collection of mandatory dues nonetheless is unconstitutional because the LSBA hasn't provided the First Amendment safeguards that the Supreme Court prescribed in Keller. In Keller, the Supreme Court said that bar associations, if they're going to collect mandatory dues, at least have to provide certain safeguards, and that includes informing attorneys about how their dues are used so that if they think their dues are going to something they shouldn't have to pay for, they can object to that and have that objection resolved by a neutral decision-maker. Maybe I'm not understanding your argument, and you're saying that there are no procedures at all, but assuming there are some procedures, has your client engaged with them, filed a complaint, done something with risk to complain about expenditures? He has not, Your Honor, and the district court said that his claim was hypothetical because he couldn't identify any expenditures to which he would have objected if he had had notice of them, but respectfully, that doesn't make sense because the whole basis of the claim is that he wasn't told about things, and so how could he be expected to identify the things of which he wasn't told? And there's a more fundamental problem with that view. So your complaint on that, your complaint on that is the inability to identify non-germane expenditures. Correct, and there's a there's a more fundamental problem with that, which is it doesn't matter whether the LSBA has actually ever used members' mandatory dues for non-germane speech in the past because Keller requires these safeguards as a prerequisite to the collection of dues, and the collection of dues in the absence of the safeguards violates First Amendment rights. So you can't say that the LSBA has ever actually engaged in non-germane speech in the past. In Keller and then in before that in Hudson, the case that Keller relied on, the court said that you need these kind of procedures because forcing people to pay fees to a bar association or to a public sector union in Hudson by itself is a significant impingement on people's that limits any use of bar dues to, quote, germane activities. Does that present a problem for your claim? I don't know if there is one in Louisiana. You can tell me if there is one. Go ahead. There isn't, but even if there was or even if the bar association itself had adopted regulations that says we're only going to spend on germane things, that wouldn't by itself be enough because as we've seen in this case, in the Texas case, the Oregon case, bar associations take an extremely broad view of what constitutes germane speech. They tend to think that everything they do pertains in some way to improving the quality of legal services. And so to just say we're only going to be germane isn't good enough because the whole point of the Hudson and Keller safeguards is that you shouldn't have to take your union or your bar association's word for it that they're using your money for proper things. You have a right to look at what they're doing and decide for yourself whether it's appropriate and challenge it if you think it isn't appropriate. And again, the court said that you need these safeguards because these things inherently infringe on First Amendment rights. And so to minimize that and to ensure that attorneys aren't being forced to pay for non-germane speech, you have to have the safeguards before you take the money. And so because the plaintiff here is of course forced to pay dues and because he alleges that the safeguards aren't in place, that's enough to give him standing and state a claim. The defendants have tried to say a lot about the merits of this claim on appeal, but the merits aren't before this court. And the district court should address that in the first instance. And of course it could be that evidence regarding what the bar has done in the past would be relevant to that. He doesn't need evidence necessarily of non-germane activity that he didn't have notice of in the past to prevail on his claim. He doesn't have the right to find out if they have done that because it certainly would bolster his claim if indeed they have done these things and haven't told their members about that. But we don't know because the district court didn't give him an opportunity to engage in discovery or develop these claims at all. So if you were to write a final paragraph to an opinion from this case, given the procedural posture of the case, what would that final paragraph say in terms of who wins and loses or what direction is given to the district court? Just succinctly tell us what relief you seek on appeal. The district court's dismissal of the plaintiff's challenge to mandatory membership should be reversed and how the district court resolved that would depend on what the district, this court, has said about the merits. But it would, it would apply, this court would apply in one way or the other on the merits and it would reverse and if it ruled in our favor, of course, it would say that we appear likely to prevail on the merits. Reverse and remand that to the district court. Reverse the district court's dismissal of the dues claim based on the Tax Injunction Act and remand that for the district court to consider the merits in the first instance and reverse the dismissal of the challenge to the lack of procedures for lack of standing and remand that to the district court so that it can consider the merits in the first instance. I think we've covered the key points here. I'll be happy to address any further questions the court has but of course there's already been a lot of discussion on these issues and if the court doesn't have further questions, I'll wait for my rebuttal. Yes, you've saved your five minutes for rebuttal. Thank you, Mr. Cuber. Thank you. Mr. Stanley. Thank you, Your Honor. It may have pleased the court. Rick Stanley here today for the Louisiana State Bar Association and the Justices of the Louisiana Supreme Court. Your Honors, I'd like to begin this morning with at least setting two stakes in the ground as to fundamental things that I think we need to at least acknowledge if we're going to decide these cases. First, Lathrop has held that an integrated bar association that charges mandatory dues for membership does not violate the Free Association Clause of the United States Constitution. Six justices joined that opinion and that is the law of the land as we stand here today. And as I'm going to get to in a moment, it is very interesting when you read Lathrop to look at what was before the Supreme Court in terms of what Wisconsin did because it looks an awful lot like what Louisiana does. The second point, the second stake is, well, what happens if the Bar Association uses some of those mandatory dues for speech that some folks may disagree with? And that was Keller. And Keller said, well, if this is germane to the purpose of the Bar Association, which we defined as either regulation of the profession or improving the quality of legal services, then the dues can be used for those purposes. If, however, it's non-germane, they cannot. And Bar Associations must follow a procedure similar to those followed in Abood. And that's where so the question then becomes, the question on Keller is, of course, the plaintiffs in the Texas and Louisiana cases both talk about what Keller left open. Now, left open, of course, suggests that we can go either way, not bound by Keller because Keller left certain things open. In your view, what, if anything, did Keller leave open as it's pertinent to this case? Absolutely, Judge what did Keller leave open? Because I've heard a lot about the left open claim, and frankly, every time I read Keller, I find something new and interesting in it. And what Keller left open is stated in the penultimate paragraph of that opinion. And there are a few things that are important about what Justice Rehnquist stated. He stated that petitioner's complaint also requested an injunction prohibiting the state bar from using its name to advance political or ideological causes or beliefs. So the first step here is you have to have a request for an injunction directed to the idea that the state bar should not be able to use its name for any political or ideological speech. There is no such request for an injunction in the Boudreaux case. The Boudreaux case simply seeks an injunction in two respects. No mandatory membership. You can't force me to pay dues. Right, but it isn't a mandatory membership. I would, well, maybe they'll respond on rebuttal, but I construe that as saying you can't make me join a bar that advances political or ideological causes. Perhaps, but I think you have to read beyond what the complaint itself says, or at least infer more than the complaint itself says. In Keller, it was a very specific request for an injunction that the bar has no business at all engaging in these speech activities. It's a broad claim. Well, so compare that to Crow. I mean, do you think they're not bringing the same claim that was recognized as valid in Crow by the Ninth Circuit? I don't, well, first of all, I'm not sure I agree with how the Ninth Circuit disposed of them. Oh, well, that's of no moment. We're not bound by them. I'm just asking you. I'm not on the Ninth Circuit, so I have no purpose in saying that. But, Your Honor, I think the answer to your question is, is later in that paragraph of Keller. Okay. Justice Rehnquist goes on to say that the claim is that they cannot be compelled to associate with an organization that engages in political or ideological activities beyond those for which mandatory support is justified under Lathrop and Keller. So, what Keller left open, according to Justice Rehnquist, was that if you use these mandatory views or speech beyond what Lathrop and Keller has said is okay, then you may have this left-open free association claim. Right. And that's where I differ with with my learned friend on the other side here. I don't think what we have in Boudreau is that sort of claim, where there's a claim of non-germane speech by the LSBA that would qualify as a standalone free association claim left open in Keller. Okay, since we're 12 v. 6, right? We're at the motion to dismiss. All we have to do is read the complaint, then, and see whether they've alleged that claim. Correct. Now, what they have done, Judge, is they have alleged eight or nine, I forget which, eight or nine things that the bar has taken policy positions on. And they allege in there, this is in the early part of their complaint, that they think some of these may be non-germane. We don't know exactly which ones they're claiming to be non-germane, maybe all. They're not, they're not clear about that. But when you get to count one, which is the free association claim, they don't use the term non-germane, and they don't refer to any of those particular policies. So we're a little bit left without a roadmap as to connecting the claim that the bar engages in non-germane speech. Okay. It may, as far as I know, be that we generally do so. It may be that these are examples, but some of the might, don't seem at all to be non-germane. So you're referring to their complaint? Yes. Okay. Complaint and the, in count one, I believe, the allegations there. So according to what your question, Judge Smith, what was left open? I think it's stated in that second to last paragraph of Keller. And Justice Rehnquist tried to tell us that it's got to be something that is not already permitted by Lathrop or Abood. And I said Keller earlier, it says Abood. So one question that I think is important for the court is what exactly was left open or what was talked about in Lathrop? And when we go to the Lathrop opinion, and when we look at what Justice Brennan wrote about, he was very careful to say these are the kinds of things Wisconsin is doing. They're engaged in making attorneys notaries, extending personal jurisdiction over non-residents, allowing recording of unwitnessed conveyances, issues of courtesy and dower, special appropriations for research for the state legislative council, practice of procedure in the federal courts, positions on legislation as recommended by the sections of the Wisconsin Bar. The court then said on this record, on this record, we find that these activities don't impinge on the freedom of association. Simply paying dues to an organization that engages in these types of legislative activities. And the court in Lathrop said only two of the 12 bar committees fiddle around with this legislative process. Similarly, in Louisiana, 3% of our dues relate to legislative things. The other 97% relate to either regulation or improving. Okay, let me give you an example from the complaint. This is from the complaint in Boudreaux's paragraph 44. It says the L. S. B. A.'s miscellaneous policy positions also include, among others, a resolution urging the adoption of laws prohibiting discrimination in employment, housing and accommodations for LGBT persons. Now, I understand, I guess, two questions. Um, is that a if if dues are used to fund that, that policy position, is that germane under Keller? That's question one that that that goes to the claim that funds shouldn't be used for that. So I guess that's a second one is, are they also arguing in your view? You can't force us to associate with an organization that takes this position in my name as a member, right? That's as I understand the Lathrop left open claim. What's your reaction? Let me answer the second. Okay, sure. Nowhere does the Bar Association ever purport to say we're taking this position for every each and every member of the Bar Association. And Justice Harland's concurrence in Lathrop made it quite clear that no one would think that all lawyers in the bar believe or support everything that any bar says. And so, but they're alleging, they're alleging the bar takes this position. Correct. I'm forced to be a member of the bar. So you're forcing me to associate with the organization. That's where I think they fall short. Because in Lathrop they said that you're not really required to do anything other than be a member and pay dues. You're not required to be a member of a committee. You're not required to vote. You're not required to show up. And you're certainly not required to support things that the bar does. This is where you're saying they're not saying you're forcing us to come to the meeting where the bar subcommittee says we're in favor of these kinds of laws. Well certainly you're not. Because that would, you're okay, you're just saying they're only requiring me to be a member. Only requirement is that you be on the roster of attorneys. Okay, so what's the answer to the second question? Is that a germane or a non-germane project? Well that would go back to the bylaws of the Louisiana State Bar Association for legislative policy. And one of the things is to make sure that everyone has access to justice and they believe, I suppose the committee which is made up, it's very complicated. It's a 25 member committee. 15 are elected from the House of Delegates. 10 are appointed by the president. By majority vote they have to decide that a legislative policy position they wish to take falls within the bylaws. And the bylaws also specifically prohibit in Louisiana the divisive or ideological. Well okay, so yes, laws prohibiting discrimination in employment, housing, and accommodations for LGBT persons. I mean that's the Equality Act in front of the Congress of the United States right now. It's one of the most divisive political issues in the nation. Correct. And so back to a question I heard you ask earlier, Judge Duncan. I mean some of these issues that fall within regulation of the bar, advertising being one of them, are going to be political in nature. But they're also going to be germane to regulation and they're going to be germane to improving the quality of legal services. The one that you cited is perhaps debatable. And that's why you have Keller procedures that allow for someone to say, I object. That's a separate question, whether the procedures are adequate to object, right? You have to Because if it's germane, then we don't, you don't need procedures to object, right? If it's germane. I would argue if that were the question before the court, I would argue that it is germane. But even that... You're saying, I just want to understand your answer. The state bar says we urge adoption of the Equality Act. That's germane to the regulation of the legal profession under Keller. Not to the regulation, but to improving the quality of the legal system. To improving quality of legal services. Public, yes. Okay. All right. So, and I understand and I agree that there can be differences of opinion. I mean, Justice Rehnquist did as well. He said, where we draw the line on what is and is not germane, it's going to be difficult. Well, so you would have to agree that the resolution calling for the nuclear freeze would be non-germane? Yes, because he said so. Well, it's more than he just said so. I mean, he's trying to, he's trying to identify the extreme. He's setting a goalpost to the left, and he's saying if you go beyond that goalpost, it's no good. And I think that was a useful and helpful thing to do. But we are going to disagree, as lawyers and as judges, as to what is germane and what is not germane. And that's where Keller said, well, when that occurs, you have an objection procedure. You can file the objection, and in Louisiana, you can do that. There is an objection procedure. The Board of Governors can then issue a refund, which it has done. Okay, how is notice given to attorneys in Louisiana with respect to policy positions? Yeah, to policy positions or specifically to the funds and what they're being used to fund? Because the attorney has to know about it in order to make an objection. I will say that, to my knowledge, we don't tie and say we spent this much to come to this policy position. Well, then how can an attorney make an intelligent objection? Well, we do say here are the policy positions, and that is on the website, and it's under the Legislative Committee. And you can click on it, and you can see exactly what the bar has done. And then you have 45 days to object. And if you file an objection, the Board of Governors will either give you a refund, and if the Board of Governors says no, no As Abood said, you have an impartial decider making that decision. In your view, that rises to the level of the Hanson procedures that the court said, look, if you do Hanson procedures to object, that's okay? I think the LSVAs procedures comply with Hanson and Keller. Okay. So that, in essence, is the left-open claim, and it is why I think in this case it is not the argument that we're hearing that, oh, yes, we did, is not the same argument that was put before the district court. And I think it's in recognition that maybe Crow seized on this and sent it back. And, of course, there's some idea that maybe this complaint can be shoehorned into that. But I think the fact that this complaint doesn't include the injunctive relief that Keller said was sought in that case, or at least that type of that specific injunction, then I think there's another reason that affirms the district court. I'm going to go on, if I may, to the second claim, which is the Tax Injunction Act. First and foremost, I think this court knows that the Tax Injunction Act poses a jurisdictional impediment to a challenge to anything that is a state tax. And as this court has struggled with homebuilders and NINAST, it's not easy always to say what is a tax and what is a fee. I agree with my opposing counsel that state labels don't control that issue, but state labels do matter. The court should and could consider state labels. And here, I think, is an instance where you should consider the state label because it was applied in the same way that it was applied in the Bar Association. And the reason why this Monday is important is it was decided to an objector to paying this dues two years after the LSBA was organized by Act 54 of the legislature. So we have the exact court that was involved in the creation of the Bar Association saying what this was. And the Supreme Court said this is a license tax. That's what it is. And we apply it by way of dues. Now, applying the three factors of homebuilders and NINAST, are these bar dues imposed by a legislative authority? That is answered by Mundy. Mundy said, yes, we derive the authority to impose bar association by legislative authority. And I think that that's important because I don't think there's any other way they could have imposed dues on the members of the Bar without legislative authority. I think that's why Act 54 is there. It had to be authorized by the legislature. Let me see if I understand. Are you saying the legislature imposes the dues or the Louisiana Supreme Court? It's very odd because the legislative act just refers to this as a memorial, which I still don't completely grasp. But in the act, they authorized the Supreme Court to organize the bar and then authorized the bar to set the dues with Supreme Court approval. And it is that second step where the dues actually get established, but it's the authorization that comes in the legislation that does that. Okay. And in that same act, by the way, or in Mundy, at that point it describes the state bar as an agency of the court. But I will concede that the LSBA is a hybrid of sorts. It does some things that are private. It's a nonprofit corporation. It's not like a traditional state agency. I understand that. But it is described as an agency of the court and it does have certain official functions that the court grants to it, including running the CLE program, maintaining the roster of attorneys, and it has a function involved in lawyer advertising that's directly related to the application of Rule 7.7 of the Supreme Court. So I think we pass, as the district court said, the first bar or the first test, which is, is this with legislative authority? Yes. Is this imposed exclusively on lawyers? Yes. Well, that cuts against us because that is a factor that would suggest the TIA does not apply. So that brings us to the third factor, which is, are we primarily for the benefit of the lawyers or are we also, do we extend also to the community at large? And my opponent says, well, two things there. One, you say you're not regulatory. And the answer to that is, well, we don't say that. What we say is that there's another organization in Louisiana that does a lot of the regulation and that's the LADB through the ODC. They're the guys who get you if you don't follow the rules of professional conduct. But regulation of lawyers does not begin and end with discipline. Regulation of lawyers is a lot more, in fact, discipline is when you're not just maintaining sections, maintaining publications. All these kinds of things are for bar regulation that are positive in their nature. And in addition, do we go beyond, as we did in homebuilders, are there things that benefit the public? The answer is yes. Indigent defense funding, pro bono resources, arbitration mediation, client protection, searchable online resources for the public, bar referral services, all of those are programs that go beyond just regulating the bar and are designed to improve the service. So under the TIA test, I would suggest that we meet two of the three factors and the district court was correct. Would we be the first court ever to say that a state bar fee qualifies as a tax under the TIA? No, you wouldn't. Who else said that? There's two district courts in North Carolina that found that the North Carolina bar dues were taxes and that the TIA applies. Now, they're district court cases, though. I thought part of the test was whether the fee or the tax defrays costs of the organization instead of raising general revenue. If that's part of the test, then these really do defray the cost. They're not part of the general revenue of the state, are they? It is true that they don't go into the state treasury. So in that sense, they never touch the state treasury and come back to the Bar Association. It goes directly to the Bar Association. And it is true that they defray the costs of running the Bar Association. But do they also fund services that would otherwise be important to the public or necessary to the public? And my argument there is yes. And part of that, Judge Smith, is Louisiana had a long history of failed attempts to regulate the bar before it enacted Act 54. There were many private bar associations that existed before then. And in fact, the LSBA was enacted as a reform in an effort to better regulate the bar and to prevent the I would argue that the dues slash tax, the license tax, no one likes to call it that, but that's what it is. The license tax does defray the cost of these services that go beyond simply regulating the bar and improve the quality of legal services for all of the citizens of the state. I will move quickly to count three. This is the count that the district court dismissed on standing grounds. First of all, we do have, I think I've already mentioned to Judge Duncan that Louisiana State Bar Association does have Keller safeguards and they're designed to comply with the Keller standards. So there are safeguards in place and they include both limits on what the legislative committee should do. And that includes avoiding ideological or that isn't what happens, but that's what it says. And in this instance, what the district court found, and I think correctly so, is that this plaintiff, Mr. Boudreaux, not the hypothetical plaintiff, but this plaintiff, Mr. Boudreaux, his injury is purely hypothetical because he did not identify any non germane activity that he objects to and that he said, well, I just learned about this and I had no notice of it. And that's his whole argument is that he couldn't find out enough by going on the bar's website and there's some non germane activity out there. But he never makes that allegation in his complaint. And the district court at page 33 of its opinion makes that point. Second, the district court said Mr Boudreaux does not identify any L. S. B. A. Resolution with which he specifically disagrees. He personally disagrees. And of course we had its motion to dismiss stage. We haven't taken any depositions, but this is precisely the same as Lathrop. Going back and reading the Lathrop opinion, Mr Lathrop did not identify anything specific that the bar was doing that he disagreed with. His argument was the broader argument that we've heard here this morning, that I don't want to give my money to anybody who is doing any of this stuff. Well, as I understand it, Mr Boudreaux's argument on claim three is the L. S. B. A.'s deficient notice process makes it impossible for him to identify non germane expenditures. He said it was insufficient. I believe not necessarily impossible, but he claims that there's an insufficiency in the process. But that's where the So what didn't you learn about by looking at the website that you now object to? And that's where the complaint failed to make any allegation. Um, and then finally, the district court said that Mr Boudreaux did not allege that the L. S. B. A.'s procedure placed any undue burden on him personally. The argument that was made was, well, others may be burdened or others may not even bother with the objection procedure. But the district court said that's not enough for Article three. Article three is not about other hypothetical plaintiffs. This is a specific plaintiff bringing in 1983 action. We're all familiar with 1983 actions. And when you bring a 1983 action that could trigger attorney's fees under 1988, you have to And here we have a claimant, a member of the Louisiana Bar, who, for all of these years, never once objected to anything. Doesn't allege that he did. He happened to know. Is there in the record? Are there the number of objections over a certain period of years to fees? It's not in the record, Judge, but I can answer your question if you wish. Uh, the over the years, a rare event. I would say there was one year where a lot of D. A. S. Assistant D. A. S. Objected and got a refund because of a position the bar had taken on some legislation that the D. A. Association did not like. And recently, there is another wave of objections. Um, and I can't recall the specific policy to which the objection was made, but the board of governors agreed and twice within the last 10 years. Okay, thank you. So we believe the district court was correct. In fact, we think that the district court's reasoning on standing is entirely consistent with the Lathrop case. Um, finally, we've talked a little bit about the Crow decision, which came out last week. Uh, with respect to the mandatory fee issue, Crow affirmed on that issue and said that this issue is not foreclosed. This issue is foreclosed rather by Keller and Lathrop, and there's no point in even getting to it. So on that score, I don't think Crow helps the plaintiffs. But on the second point, the Crow court did find this left open claim, this free association left open claim. And my point on that is simply that that has to be a claim that is different than the one that was rejected in Lathrop. There's got to be something more than in Lathrop, and I'm not familiar enough with the Crow record to say that there is. Although I did read those bulletins, and I think that they were somewhat surprising and eyebrow raising in terms of well, I'm not sure how you get those under Keller and Lathrop. You know, the Ninth Circuit certainly raised its eyebrows and said that's a claim that is correct. And I think that Keller itself says it has to be related to some particular injunctive relief. Uh, but I also wanted to draw the court's attention to both in terms of deciding this on a motion to dismiss. When the Supreme Court denied certiorari in Jarchow, both Justices Thomas and Justice Gorsuch said, Yeah, this is gonna come up on a dismiss because these claims are typically foreclosed by Keller. So to that extent, I don't think the district court's out there. I think the Supreme Court recognizes that these precedents are not razor thin. These precedents are a little bit broader than the plaintiffs would have us believe. In conclusion, the Louisiana bar is the product of much history of failed regulation and was designed by the state to both help regulate the bar and to improve the profession for the people of the state. Louisiana tries to faithfully follow the Keller procedures, and the general allegations of this complaint simply don't overcome existing precedent. We would, therefore, request that the district court be affirmed in all respects. Thank you. Thank you, Mr Stanley. Mr Cuber, you said time for rebuttal five minutes. The Jarchow case in which the Supreme Court denied cert is not relevant to the argument about the issue that Keller preserved because the plaintiffs in the Jarchow case didn't make the argument that they are that we're making here about the issue that Keller preserved at all. All they said was they asked for dismissal in the lower courts and went directly to the Supreme Court to say that it went that they want the Supreme Court to our association membership and dues on that basis. And, of course, if you want the Supreme Court decision overturned, you have to ask the Supreme Court to do that. I realize I've left my mask on here. It's hard to remember these things. We all know the denials of cert don't carry any precedential importance in any way. Sure, but even Justice Thomas and Gorsuch's comments, uh, don't really pertain to this issue because the plaintiffs in the Jarchow case did not raise the issue about what Keller preserved. Uh, uh, regarding Lathrop, Lathrop simply held that mandatory membership in a bar association is constitutional inasmuch as it's acceptable to require attorneys to pay for the cost of their own regulation. And at least implicitly, and Lathrop isn't very clear, and it's a plurality decision, it suggested it may have suggested that mandatory membership in a bar association that engages in germane political and ideological speech may be acceptable. But it certainly didn't resolve the issue that Keller left open. And one reason why we know that, besides reading the Lathrop, is that Keller itself says that this is an issue that we aren't deciding and that we can't decide. Uh, so Lathrop certainly hasn't resolved that issue. Also, Keller may have involved a request for an injunction against the bar using its name in advocating, uh, in engaging in non-germane speech. But of course, I mean, that's, that's not an important distinction inasmuch as asking for an injunction against being forced to be a member, as long as it's using its name to engage in non-germane speech amounts to the same thing, of course. Uh, and that has nothing to do with the, the substantive constitutional issue that the court hasn't addressed. Um, that there's been a suggestion that the argument that the plaintiff is making on appeal is different from the arguments he made below. That's not correct. The, the arguments made in response to the defendant's motion to dismiss in the district court, uh, were exactly the same. It's true that the, the complaint does not spell out, uh, the point about that we have in developing the argument, but certainly the way it's stated, the mandatory membership, uh, claim alleges sufficient facts, especially when liberally construed to present that issue. Uh, the LSBA's dues, uh, aren't imposed by the legislature. At best, and even this is ambiguous, the legislature has said that it's okay for the LSBA to charge dues, but the LSBA is the entity that sets the dues. And of course, any entity that is going to be forcing members of the public to give it money probably has received some kind of legislative authorization to do that, because otherwise, where would this entity get its authority? Uh, the question isn't whether the entity gets his authority to charge the dues in the legislature. The question is, who's setting this charge? Who's telling people they have to pay it? Who's deciding how much it is? And certainly that's the LSBA. It decides how much it's going to charge. It could charge nothing if it wanted to. Uh, and it, and it decides for itself what it's going to do with the money. The only case that I know of that approved, that accepted the Tax Injunction Act argument, besides this one, is a North Carolina case called Livingston. But Livingston relied on an earlier North Carolina district court case called Jackson v. Leek. And in that case, the court said a, uh, the tax, the Tax Injunction Act barred a charge that was imposed on lawyers, that was imposed directly by the legislature, and that went to fund judicial election campaigns. And that may have made some sense, because there you have the legislature coming in and doing it, and you have the money going for something other than regulating illegal oppression. You're paying for elections. And then later in Livingston, when there was a challenge to mandatory barred dues, the district court just said, you know, cited Livingston and said, uh, in a very, uh, summary way that, uh, the Tax Injunction Act barred the claim there as well. So that shouldn't be persuasive. Uh, the fact that objections to the LSBA's expenditures may be rare isn't of any relevance to anything. Of course, it may simply be that members don't have sufficient information, or they don't want to get on the bad side of an entity that, in some extent, is responsible for regulating them. Uh, we ask the court to reverse dismissal on all of the plaintiff's claims. Thank you. Thank you, Mr. Hueber. Your case is under admission. Thank you, Mr. Stanley, for your willingness to appear in person for oral argument. That completes the arguments of the day, and the court is in recess under the usual order.